UNITED STATES of America

v.

Avelina DURAN DE AMESQUITA

UNITED STATES of America

v.

Aldo ALVAREZ

UNITED STATES of America

v.

Arturo COBO

UNITED STATES of America

v.

Robert WELLS, et al.

UNITED STATES of America

v.

Robert WELLS, et al.

UNITED STATES of America

v.

Daniel Neal HELLER

UNITED STATES of America

v.

Euardo SERVANDO–GARCIA, et al.

UNITED STATES of America

v.

Samuel QUINLAND, et al.

UNITED STATES of America

v.

Leon SHIPLEY

UNITED STATES of America

v.

Brenda PEARSALL, et al.

UNITED STATES of America

v.

Leopold PLANELL, et al.

Nos. 83–453–Cr–LCN, 83–460–Cr–EBD, 83–720–Cr–LCN, 83–580–Cr–JE, 83–581–Cr–LCN, 82–327–Cr–EBD, 83–660–Cr–EPS, 80–497–Cr–WMH, 83–598–Cr–CA, 83–857–Cr–JWK and 84–10–Cr–JE.

United States District Court,
S.D. Florida,
Miami Division.

March 21, 1984.

Stanley Marcus, U.S. Atty., by Michael Patrick Sullivan, Asst. U.S. Atty., Miami, Fla., for plaintiff.

William P. Cagney III, Joseph D. Beeler, Miami, Fla., for defendants.

## MEMORANDUM OPINION and ORDER

EATON, Chief Judge.

These cases were consolidated for the purpose of the above judge's consideration of motions to dismiss the indictments for alleged constitutional and statutory violations in the selection of grand and petit jurors in the Miami division of this Court.

All of the defendants in these cases were indicted by Miami grand jurors and all will be tried in Miami absent dismissal of the indictments.

All of the motions were timely filed under 28 U.S.C. § 1867(a).

The defendants advance equal protection as well as Sixth Amendment "fair cross-section of the community" arguments in their constitutional challenges.[1] They do not allege purposeful discrimination. The emphasis is on the structure of the venire. The defendants take the position that there is underrepresentation of two cognizable groups due to the systematic exclusion of those groups in the jury selection process. That process derives the jury pools from voter lists not supplemented by any other source or sources of names. The alleged cognizable groups are "hispanics" and blacks.[2]

The prima facie tests for equal protection and Sixth Amendment fair cross-section claims are almost identical. *Davis v. Zant,* 721 F.2d 1478 at 1482 (11th Cir.,1983).[3]

The Supreme Court outlined the method for proving an equal protection violation in *Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977):

> The first step is to establish that the group is one that is a recognizable, distinct class, ... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time ... Finally, ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

A successful fair cross-section claim requires the following proof:

> [T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

With respect to "hispanics," movants' proofs fail the first prong of both tests.

---

1. Movants stress the Sixth Amendment challenge.

2. Movants also alleged underrepresentation of other allegedly cognizable groups—blue collar workers, young people, laborers, and less educated persons—in their motions, but presented evidence only with respect to "hispanics" and blacks. Moreover, the evidence concerning blacks was allowed without objection, and will be considered, although underrepresentation of blacks was alleged in some but not all of the motions. Both movants and respondent were fully prepared at the hearing and subsequent oral argument to contest the alleged underrepresentation of blacks on the Miami Jury wheels.

3. The two attacks differ only in the way the prima facie case is rebutted. *See id.* at 1482 n. 6.

Movants' evidence concerning blacks in this division founders on the second prong. The motions to dismiss must therefore be denied.

*Hispanics*

The evidence in this case consists of defendants' exhibits one through ten, comments thereon, and expert opinion that "hispanics" constitute a cognizable group in the Miami division of the Court.

The threshhold question on the claim alleging underrepresentation of "hispanics" is whether "hispanics" constitute a cognizable class of persons.

Defendants urge that because the latest census figures now provide information about the citizenship of those persons with "hispanic" surnames, defendants' position (bearing upon eligibility to serve on grand and petit juries) that "hispanics" constitute a cognizable class is much stronger than was the position of previous challengers who attempted to establish that "latins" constituted a distinctive group in the community.

Whether a described class of persons is sufficiently distinct and cognizable for equal protection or fair cross-section analysis is a question of fact. *Hernandez v. Texas,* 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). Apparently the only case that has suggested that "latins" (hispanics) constitute a cognizable class is Judge Hatchett's opinion in *United States v. Cabrera-Sarmiento,* 533 F.Supp. 799, 804 (S.D.Fla.1982). The Judge made no underlying findings of fact, but wrote, "I am convinced that Latins in the Miami area meet the criteria" set forth in *Castaneda v. Partida, supra,* 430 U.S. at 494, 97 S.Ct. at 1280 ("a recognizable, distinct class, singled out for different treatment under the laws as written and applied"). *Id. Cf. United States v. Musto,* 540 F.Supp. 346, 356 (D.N.J.1982) (making doubting assumption of "hispanic" cognizability for analytical purposes). Moreover, Judge Hatchett found that the defendants had failed to prove that the proportion of "latins" in the

total population *eligible to serve as jurors* was significantly greater than the proportion called to serve as grand jurors and appointed as grand jury forepersons over a significant period of time. The Judge noted that "defendants were unable to provide any officially recognized figures showing the Latin population broken down by age, citizenship and English language ability." *Id.*

As far as this judge is aware, no one has ever presented an adequate factual basis to establish "hispanics" as a cognizable class.

For "hispanics" to constitute a cognizable class, it must be shown that there exists a cohesiveness of attitudes, ideas or experience which distinguishes the class from the general social milieu; that a community of identifiable interests is present amongst "hispanics" which is not shared by other segments of the populace. *United States v. Test,* 550 F.2d 577, 591 (10th Cir.1976).

If the proposed class were "Cuban-Americans," or "Spanish-Americans," or "Puerto Rican-Americans," the mental image of the "cognizable class" would be easy to discern. Mexican-Americans, for example, were held to be a cognizable class in *United States v. Test,* 550 F.2d 577 (10th Cir.1976). But to lump persons from so many countries (even continents) together as a distinct class requires the exercise of considerable philosophical imagination. I do not believe that persons of Nicaraguan or Salvadoran heritage and persons of Cuban heritage could comfortably equate their cultural backgrounds and attitudes one to another. *See, United States v. Rodriguez,* 588 F.2d 1003, 1007 (5th Cir.1979). Persons of Puerto Rican heritage could not comfortably equate their backgrounds and attitudes to those persons of Mexican heritage.

If persons with "hispanic" surnames could be established as a cognizable class in the Miami district, and such has not been established in this case,[4] it would remain to

---

4. On this score one should note that the identified population would include an unaccounted-for number of non-"hispanic" women who have

married and adopted the "hispanic" surnames of their spouses.

be shown that the proportion of "hispanics" in the total population of the Miami division *eligible to serve as jurors* is significantly greater than the proportion called to serve as jurors over a significant period of time.

As in *Cabrera-Sarmiento*, defendants are unable to show recognized figures of the "hispanic" population broken down by age and English language ability.

The Court finds that the statistical evidence presented in Defendants' Exhibit 4, Analysis Set C, may be relied upon by the Court. The independent survey conducted on behalf of the defendants is a reliable survey. However, defendants necessarily seek to make the use of Spanish surnames the bedrock of their challenge. The foundation is too porous. Because the Court cannot appraise the validity of the jury selection system by considering that all persons of Spanish surnames have a community of interests not shared by other segments of the populace, the defendants are unable to make out a case for "hispanics" as a cognizable group. There are just too many José Gonzalezes, Cardozos, Felixes and Ferres whose attitudes and experiences do not coalesce with those of other José Gonzalezes, Cardozos, Felixes and Ferres to allow the Court to consider them all to be members of one cognizable class for the purposes here discussed.

It is quite clear that there is in the Miami area a large number of the various kinds of people who are often referred to as "hispanics." It is equally clear under the law that a court cannot act upon only an assumption of disproportionate representation. The factual support for the "hispanic" attack is insufficient to establish the threshhold requirement of a cognizable class under either Fifth or Sixth Amendment analysis.

Finally, even if the Court accepted movants' position that "hispanics" are a sufficiently distinct group in this community, the Court would still conclude that "hispanic" underrepresentation on Miami jury venires is not constitutionally significant under either test. *See* Defendants' Exhibit 4, Analysis Set C and discussion, *infra*.

*Blacks*

Unlike "hispanics," there is no question that blacks are a constitutionally cognizable class. *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879). Through the use of statistical analysis and the testimony of expert witnesses, movants have attempted to demonstrate that members of the class are underrepresented in the Master Jury Wheel of this division drawn on August 11, 1981, and that such underrepresentation is of a constitutionally violative dimension. Movants' proofs, however, fall short of a prima facie case.

First, as defendants concede, any disparity between the number of jury-qualified blacks in the Master Jury Wheel and in the general population is simply a function of the general tendency of members of the black community to register to vote in smaller relative numbers than members of the non-black community. As stated at the outset, the Miami Master Jury Wheel is drawn solely from the list of registered voters without objective or subjective supplementation.

Thus, even were the prima facie tests substantially different, movants' claims with respect to blacks would more properly be analyzed only under the Sixth Amendment, which requires proof of a systematic exclusion of class members in unfair and unreasonable numbers in relation to the number of such persons in the community, without the need to allege or prove the system's susceptibility to abuse or any discriminatory intent. *Duren v. Missouri, supra.* This Sixth Amendment standard has been incorporated in the declaration of congressional policy codified at 28 U.S.C. § 1861:

> It is the policy of the United States that all litigants in Federal Courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the

district courts of the United States and shall have an obligation to serve as jurors when summoned for that purpose.

In furtherance of this policy, 28 U.S.C. § 1863 mandates the adoption by each district court of a random jury selection plan. Subsection (b)(2) of that section requires the selection of prospective jurors from either voter registration lists or lists of actual voters, supplemented by other sources "where necessary to foster the policy" announced in § 1861 or to "protect the rights" secured by 28 U.S.C. § 1862 ("No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status.") "[S]ubstantial failure to comply" with the substantive and procedural provisions of the jury selection act may be challenged in either a civil or, as here, criminal case. 28 U.S.C. § 1867.

Defendants' analysis of the most recent JS–12 Report for this district, submitted to the Administrative Office of the United States Courts on August 12, 1983, indicates that blacks comprise 12.146% of the qualified Miami jury pool while blacks comprise approximately 18.82% of the jury-qualified relevant population.[5] Defendants' Exhibit 3C.

There is, therefore, an absolute disparity between blacks in the population and blacks on the Master Jury Wheel of 6.674%, and a comparative disparity of 35.46%.[6]

Not surprisingly, the defendants invite the Court to rely upon the comparative figures as the guide in the fair cross-section analysis, arguing that absolute disparity is a deceptive measure of a group's underrepresentation.

The Court believes, however, that the absolute disparity measure paints the truer picture and is therefore the more reliable of the two measures for purposes of analysis. *See Smith v. Yeager,* 465 F.2d 272, 279 n. 18 (3rd Cir.), *cert denied,* 409 U.S. 1076, 93 S.Ct. 685, 34 L.Ed.2d 665 (1972); *United States v. Musto, supra* at 355; *United States v. Facchiano, supra* at 899. Defendants are incorrect in their exhortation that the Court read the Fifth Circuit's clarification of its opinion in *United States v. Butler,* 611 F.2d 1066 (5th Cir.), *cert. denied sub. nom., Fazio v. United States,* 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980) *("Butler I").* In its denial of rehearing in that case as an abandonment of absolute disparity as the preferred method of analysis. *United States v. Butler,* 615 F.2d 685, 686 (5th Cir.1980) *("Butler II").* In its opinion denying appellants' petition for rehearing the Fifth Circuit panel stated:

We also wish to clarify a statement made in the opinion in this case. In discussing the appellant's jury challenges, we stated: "Like the *Maskeny [United States v. Maskeny,* 609 F.2d 183 (5th Cir.1980) ] court, we decline to abandon the absolute disparity method for dealing with jury challenges." *Butler [I],* at 1070. We did not wish to imply that the absolute disparity method is the sole means of establishing unlawful jury discrimination. *However, given the small absolute disparities proven and the fact that a "less than 10% minority" was not at issue, we did not feel consideration of other statistical methods was necessary in this case.*

*Id.*[7] (emphasis added).

As the Court reads *Butler II,* that opinion holds that reliance on methods other than absolute disparity is not necessary

---

**5.** The general population figure is derived from the 1980 U.S. Census, adjusted for the generally recognized population under-count.

**6.** The absolute disparity figure is simply the difference between the percentage of the cognizable class in the eligible population and the group's percentage in the Master Jury Wheel. Comparative disparity is computed by dividing the absolute disparity figure by the percentage of the cognizable class in the eligible popula-

tion. *See United States v. Facchiano,* 500 F.Supp. 896, 898–99 (S.D.Fla.1980).

**7.** The absolute disparities of the alleged cognizable groups identified by the *Butler* appellants were as follows:

| Group | Absolute Disparity |
| --- | --- |
| Non-white | 8.69% |
| Service workers | 5.71% |
| Youth (18–29 years old) | 9.14% |

when, as in this case, the cognizable class comprises more than 10% of the eligible population.[8]

After consideration of the evidence and testimony adduced at the hearing on the consolidated motions, and the argument of able counsel, the Court concludes that the defendants have failed to make a prima facie case of a fair cross-section violation. *Swain v. Alabama,* 380 U.S. 202, 208–09, 85 S.Ct. 824, 829–30, 13 L.Ed.2d 759 (1965); *Butler II, supra; Butler I, supra; Maskeny, supra; United States v. Haley,* 521 F.Supp. 290, 292–93 (N.D.Ga.1981); *Facchiano, supra.*

This Court shares the twin goals of the Jury Selection and Service Act of 1968— that all qualified citizens have an equal chance to exercise their privilege to serve as jurors in federal courts, and that litigants' fair trial rights be protected by their access to jury pools containing a fair cross-section of the attitudes and collective experience of the community. 28 U.S.C. §§ 1861, 1862. In formulating a method to meet these goals Congress determined that voter lists should be the source for selection of jury pools.[9]

Congress also recognized that sole reliance on voter lists would necessarily exclude those who, for whatever reason, voluntarily choose not to add their names to the voter rolls. As the House Report to the Act stated, however:

> This is not unfair ... because anyone with minimal qualifications—qualifications that are relevant to jury service— can cause his name to be placed on the [jury] lists simply by registering or voting. No economic or social characteristics prevent one who wants to be considered for jury service from having his name placed in the pool from which jurors are selected.

H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin.News 1792, 1794–95.

 Moreover, the courts are in agreement that no constitutional issue is presented by the fact that an identifiable group registers or votes in proportion to its numbers less than other members of the community. *See, e.g., United States v. Lopez,* 588 F.2d 450 (5th Cir.1979); *United States v. Arlt,* 567 F.2d 1295 (5th Cir.1978); *United States v. Briggs,* 366 F.Supp. 1356 (N.D. Fla.1973). Reliance on voter registration lists is constitutionally infirm only if the lists are compiled in a discriminatory fashion, *United States v. Parker,* 428 F.2d 488 (9th Cir.1970), or if nondiscriminatory reliance results in a jury pool below the Sixth Amendment standard. *Butler I, supra.*

The Court has already held that the disparity shown by defendants between blacks in the eligible population and in the jury pool does not satisfy the prima facie test. While it is clear that a 0% disparity would be preferable, a jury pool in the form of a mirror-image of the community is not required by either the Constitution or the statute. *Briggs, supra; cf. United States v. Perez-Hernandez,* 672 F.2d 1380, 1385 (11th Cir.1982).

Amending the current district plan by supplementation from other sources does indeed deserve further consideration. *See* Judge Paine's discussion in *Facchiano, supra* at 903–04.[10] The propriety of such consideration, however, has no bearing on the forthcoming prosecution of movants on their pending indictments.

In accordance with the foregoing, it is

ORDERED and ADJUDGED that the consolidated motions be, and the same are, hereby DENIED.

**8.** As found *infra* at 1330, blacks comprise almost 20% of the eligible Miami division population.

**9.** Voter lists readily provide names of persons in the community who are over the age of 18 and who are citizens of the United States.

**10.** A new venire for grand and petit jury service will issue following this year's general election. The results obtained from use of the new voter lists will dictate whether or not supplementation is advised.