705 So.2d 1331 (1997)
Manuel VALLE, Appellant,
v.
STATE of Florida, Appellee.
No. 88203.
Supreme Court of Florida.
December 11, 1997.
Rehearing Denied February 23, 1998.
*1332 Stephen M. Kissinger, Chief Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Fariba N. Komeily, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal a decision of the trial court dismissing Manuel Valle's postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Valle was convicted of first-degree murder, attempted murder, and possession of a firearm, and was sentenced to death for the murder charge. Valle v. State, 394 So.2d 1004 (Fla.1981). On direct appeal, this Court reversed the convictions and sentences and remanded for a new trial. Id. On retrial in 1981, Valle was again convicted on those *1333 three counts and again sentenced to death. The convictions and sentences were affirmed by this Court in Valle v. State, 474 So.2d 796 (Fla.1985). The United States Supreme Court subsequently vacated Valle's death sentence and remanded the case to this Court for further consideration in light of Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), regarding the admissibility of model prisoner testimony. Valle v. Florida, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986). We remanded for a new sentencing hearing before a new jury. Valle v. State, 502 So.2d 1225 (Fla.1987). On resentencing, the jury recommended death by a vote of eight to four. The trial court, Judge Norman Gerstein presiding, imposed the death sentence, finding five aggravating factors (three were merged) and no mitigating evidence.[1] This Court affirmed. Valle v. State, 581 So.2d 40 (Fla. 1991).
Valle's first rule 3.850 postconviction motion to vacate his conviction and sentence was summarily denied by Judge Richard Margolious without prejudice to allow Valle to file a legally sufficient motion before December 2, 1993. Valle filed his second postconviction motion to vacate on December 2, 1993. In that motion he raised twenty claims. Following a Huff[2] hearing, Judge Margolious summarily denied the motion without holding an evidentiary hearing. This appeal ensued.
Under rule 3.850, a movant is entitled to an evidentiary hearing unless the motion and record conclusively show that the movant is entitled to no relief. Harich v. State, 484 So.2d 1239, 1240 (Fla.1986). Thus we must treat the allegations as true except to the extent they are rebutted conclusively by the record. Id. at 1241.
Valle argued in his motion below that counsel was ineffective for failing to move for the disqualification of Judge Gerstein, the judge at the resentencing. Valle's motion alleged that Judge Gerstein had kissed the victim's widow and fraternized with friends of the victim in full view of the jury and that counsel was aware of this behavior but failed to move for Judge Gerstein's disqualification. During the Huff hearing, Judge Margolious acknowledged that if these allegations were true, Valle's motion would have to be "strongly considered." However, Judge Margolious ultimately denied the claim as legally insufficient, stating that it failed to meet the standard for ineffective assistance of counsel claims set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Strickland requires a defendant claiming ineffective assistance of counsel to show both (1) that counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. Id., at 686, 104 S.Ct. at 2063-64. As to the deficiency requirement, a reviewing court must determine whether, in light of all the circumstances, counsel's acts or omissions fell outside the wide range of professionally competent assistance. Id., at 690, 104 S.Ct. at 2065-66. For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that but for the deficiency, the result of the proceeding would have been different. Id., at 695, 104 S.Ct. at 2068-69.
We conclude that the allegations in Valle's motion regarding Judge Gerstein's conduct and counsel's failure to move for disqualification in the face of such knowledge were sufficient as a matter of law to warrant an evidentiary hearing. This claim should not have been summarily denied. See Romano v. State, 562 So.2d 406, 407 (Fla. 4th DCA 1990) (finding facially meritorious allegation that judge should have been disqualified for knowing victim and victim's family personally). *1334 Our reading of the Huff hearing transcript reveals that the court's true concern was that Valle had not submitted any affidavits to support these allegations. Rule 3.850(c), which sets forth the contents of a 3.850 motion, requires a movant to include a brief statement of the facts (and other conditions) relied on in support of the motion. Fla. R.Crim. P. 3.850(c)(6). However, nothing in the rule requires the movant to attach an affidavit or authorizes a trial court to deny the motion on the basis of a movant's failure to do so. Accordingly, we remand with directions that the court conduct an evidentiary hearing on this issue.
Also among his claims of ineffective assistance of counsel, Valle asserted that his defense team unreasonably introduced evidence of his prison behavior, also known as Skipper evidence. Although this Court's 1987 reversal of Valle's death sentence was due to the improper exclusion of Skipper evidence at his 1981 trial, the defense's introduction of this evidence at Valle's resentencing opened the door for the State to present evidence of an escape attempt committed by Valle between the time his prior sentence was reversed and the time of his resentencing proceeding. Valle argued below and in this appeal that the defense's presentation of Skipper evidence was due to an erroneous belief by the defense team that it was required to present Skipper evidence since our reversal had been based on its earlier exclusion.
The State responds that the defense's presentation of prison behavior evidence was a reasonable strategic decision agreed to by Valle. In support of this argument, the State points out that Valle agreed on the record to the withdrawal of Michael Zelman, one of his four lawyers, and posits that in so doing, Valle approved of his remaining lawyers' strategy. Even if we presume that Mr. Zelman withdrew because of a disagreement with Valle's other lawyers, it is impossible to determine from the record what the subject matter of this disagreement was. Moreover, there is nothing in the record to rebut Valle's assertion that his remaining lawyers were operating under the mistaken belief that they were required to present Skipper evidence. Taking these allegations as true, we conclude they are legally sufficient under the Strickland standard to warrant an evidentiary hearing on whether Valle's lawyers introduced Skipper evidence at Valle's resentencing only because they believed this was required[3] and if so, whether there is a reasonable probability that in the absence of the State's rebuttal evidence, Valle would not have been sentenced to death.
The same cannot be said for Valle's claim that defense counsel was ineffective for failing to move for Judge Gerstein's disqualification based on alleged ex parte communications with the State. Specifically, Valle's motion below alleged that "[w]itnesses observed the state and the judge emerging from his chambers during trial discussing, what appeared to be, matters of some importance." We agree with the court below that this allegation was insufficient as a matter of law. It was not error to deny it as such.
Likewise, we find that Valle's other claims of ineffective assistance were properly denied as legally insufficient. As to the claim that defense counsel was ineffective for failing to call as witnesses his mother and former wife, who could have buttressed the expert testimony presented regarding Valle's gambling habit and difficult childhood resulting from his family's decline into poverty; for failing to conduct an adequate investigation into Valle's background and character, which would have revealed further corroborative evidence; and for failing to properly prepare and examine those witnesses who were discovered, this evidence would have been cumulative.[4]See Card v. State, 497 So.2d 1169, *1335 1176-77 (Fla.1986) (counsel cannot be deemed ineffective for failing to present cumulative testimony). As to the claim that counsel was ineffective for failing to properly object to and preserve for appeal the State's peremptory challenges at voir dire, there is no reasonable probability Valle could prove the challenge had been made in a racially discriminatory manner. Valle, 581 So.2d at 44 n. 4.
Valle also claimed that counsel was ineffective for failing to prevent the State from filling the courtroom with an "overwhelming presence" of uniformed police officers for the purpose of intimidating the jury and judge. However, the record conclusively refutes this claim. Defense counsel filed a pretrial motion to prohibit the attendance of uniformed police officers, and the trial court in response monitored the presence of uniformed officers in the courtroom. Defense counsel again raised the matter at trial prior to closing arguments.
Valle asserts that the trial court erred by not requiring the Dade County State Attorney's Office to comply with section 119.07(2)(a), Florida Statutes (1993), which requires an agency to list the basis for a claimed public records exemption, and contends that this deprived him of the opportunity to argue against the claimed exemptions. The record refutes this. At the hearing on Valle's first motion to vacate, the State represented that the only items taken out of the State Attorney's files were the prosecutors' personal notes. Postconviction counsel recognized that the trial court would have to conduct an in camera inspection on the claimed exemption. Valle was therefore on notice as to both the claimed exemption and the likelihood of an in camera inspection. See Lopez v. State, 696 So.2d 725 (Fla.1997). After examining the submitted papers in camera, the court concluded that they were not public records under chapter 119. Our review of those sealed documents leads us to agree with the trial court's characterization. The documents consist of the prosecutors' notes to themselves for their own personal use, including outlines of opening and closing arguments and notes of witness depositions. See State v. Kokal, 562 So.2d 324, 327 (Fla. 1990), and cases cited therein.[5]
Valle also claims that the trial court erred in refusing to grant him leave to pursue public records claims against several state agencies under chapter 119 and to thereafter amend his motion. The trial court denied this request on the ground that it did not have jurisdiction over those entities. These claims are either moot or without merit. With regard to his public records requests to the Florida Department of Law Enforcement, Valle claims that his suit against that agency was voluntarily dismissed in anticipation of rule 3.852, which gives a 3.850 court jurisdiction over the defendant's public records claims. However, rule 3.852 did not apply to Valle's public records requests because they were no longer "pending" when rule 3.852 was enacted in 1996. Fla. R.Crim. P. 3.852(i)(2). The suit against the Florida Parole Commission has since been resolved adversely to death-sentenced inmates. Asay v. Florida Parole Comm'n, 649 So.2d 859 (Fla.1994). As to Valle's public records requests to the Department of Corrections, postconviction counsel has conceded that the requested materials were obtained from the department.
Finally, we agree with the trial court that the following claims in Valle's motion below were procedurally barred: claim II, that the resentencing court improperly denied Valle's petition for a writ of error coram nobis; claim III, that the instruction on the cold, calculated, and premeditated aggravating factor was unconstitutionally vague and overbroad; claim IV, that the trial court erred in failing to instruct the jury on merger of aggravating circumstances; claim V, attacking Florida's death penalty statute for vagueness and overbreadth; claim X, that the penalty phase jury instructions improperly shifted the burden to Valle; claim XII, *1336 that counsel was ineffective in permitting the State to introduce nonstatutory aggravating factors; claim XIII, that counsel was ineffective for failing to object to alleged prosecutorial misconduct and presentment of uncharged collateral crimes; and claim XIV, that the trial court erred in finding no mitigating circumstances.[6]
Accordingly, we reverse in part and remand for an evidentiary hearing on those issues we have specified above. As to all other issues, we affirm.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW and HARDING, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurs in result only.
WELLS, Justice, concurring in part and dissenting in part.
I concur that there was sufficient specific pleading in defendant's motion to reconsider to warrant an evidentiary hearing concerning the specific allegations that defendant's sentencing counsel had personal knowledge that the trial judge kissed the victim's wife in the presence of the jury but failed to object (which I interpret as failure to move for a mistrial). However, I do not agree with the majority that defendant's allegation in either his amended 3.850 motion or his motion to reconsider that his defense team unreasonably introduced evidence of his prison behavior was facially sufficient to warrant an evidentiary hearing. I do not believe that defendant's allegations on this issue, even taken as true, are sufficient as a matter of law to satisfy the second prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I concur on all of the remaining issues.
I write further because I believe the time over which this process has stretched and the mistake made here should be the subject of direct focus. What has occurred is not "inevitable" because this is a capital case and because "death is different." Avoidance of the delay and the kind of mistake made here requires only the level of professional competence and attention of judges and counsel that defendants and the public have a right to expect and receive in these cases.
In this case, the murder of the law enforcement officer for which this defendant was sentenced to death occurred on April 2, 1978. The defendant was arrested for the murder on April 4, 1978, and was tried and initially sentenced to death in 1981. The United States Supreme Court reversed on a limited sentencing issue in 1986. The defendant was again sentenced to death in February 1988. Here we are today, more than nineteen years after defendant was arrested for the murder, sixteen years after the first sentencing, and nearly ten years after resentencing; and we must return this case for an evidentiary hearing on whether the defendant received ineffective assistance of counsel at the resentencing.
This Court affirmed defendant's second death sentence in a decision on which rehearing was denied on July 15, 1991. Defendant's postconviction counsel did not file a substantive motion for postconviction relief until December 1993, over two years later. The State responded on May 1, 1994. The trial judge, who was not the sentencing judge, held a hearing on this motion on August 26,1994. At this hearing, the trial court denied the motion, noting that an allegation that the sentencing trial judge was seen by the jury kissing the victim's wife was an allegation that was so extraordinary that the allegation itself created doubt as to the allegation's credibility. When questioned by the trial judge as to what witness would be presented to prove this allegation, defendant's counsel would not identify the witness. It appears from the hearing transcript that the *1337 trial judge denied an evidentiary hearing as to this allegation because he thought the nature of the allegation was incredible and because defense counsel would not divulge who would support the allegation.
Subsequently, on September 12, 1994, defendant's postconviction counsel filed a "Motion to Reconsider Order Denying Defendant's Motion for Post-Conviction Relief," which stated that defendant's sentencing counsel would testify based on his personal knowledge that the trial judge at resentencing was seen kissing the victim's wife in the presence of the jury. The trial court did not hold a hearing on this motion to reconsider until January 27, 1995, at which time it was denied. To recap, it took three and a half years from this Court's final disposition of the resentencing appeal for there to be a final disposition in the trial court of whether defendant's motion for postconviction relief warranted an evidentiary hearing.
In addition to the delay, I also have a serious concern about the simplicity of the mistake made in respect to the disposition of the motion. First, I have to conclude that the necessity for an evidentiary hearing based on these allegations was obvious. Accepting, as is required, that the specifically alleged testimony by the lawyer who represented the defendant at the second sentencing will be forthcoming, it is plain that such alleged conduct by the trial judge was egregious. If the evidence is determined to be credible, it raises substantial questions as to both the conduct of the sentencing judge and the competence of the resentencing counsel. The only way to test the credibility of such an allegation is to hold an evidentiary hearing. Moreover, considering the seriousness of these allegations of judicial misconduct, it is important to find out where the evidentiary truth lies in order to protect the integrity of the judiciary.
I am troubled by defendant's postconviction counsel's refusal at the August 26, 1994, hearing to identify the witness who would support these allegations. I believe this tactic contributed to the trial court's error and thus also contributed to the delay in this case. As I have expressed in other cases, I believe it is the primary obligation of postconviction counsel in capital cases to get their clients' cases heard as soon as possible. The entire postconviction process is founded upon the premise that there must be a forum in which it can be shown that the client is wrongfully on death row. If the client has a meritorious basis for postconviction relief, he should be removed from death row as soon as possible, and it is postconviction counsel's responsibility to accomplish this. On the other hand, it is a clear abuse of this process to engage in tactics designed simply to delay adjudication of the client's case. I do not believe that a knowing refusal to disclose or failure to have the information at a hearing are proper tactics. A game of hide-the-evidence has no appropriate place in these proceedings and should not be tolerated.
The unfortunate sum of this long process is that the judicial system of Florida has not reached a final adjudication of this first-degree murder case in the almost twenty years since the defendant was arrested for the murder. Surely, we can and must do better.
NOTES
[1] The aggravating factors were: (1) prior violent felony; (2) avoiding a lawful arrest; (3) committed to disrupt or hinder the lawful exercise of any governmental function or enforcement of laws; (4) committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification; and (5) victim was a law enforcement officer engaged in the performance of official duties. Factors (2), (3), and (5) were merged. The court found no evidence of statutory mitigation and concluded that either the evidence did not establish nonstatutory mitigation or the nonstatutory mitigation was outweighed by the aggravating factors.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] In making this determination, the court may take into consideration the credibility of the witnesses, such portions of the trial record as may be applicable, and any other circumstance bearing on the issue.
[4] Valle's twin sister, his father, and his former employer all testified as to Valle's background, corroborating much of the expert testimony. Also, in the case of Valle's ex-wife, the record reflects that she had been arrested for possession of marijuana during a visit to the Florida State Prison in 1982 or 1983. It was well within counsel's sound discretion not to present her testimony. See Magill v. State, 457 So.2d 1367, 1370 (Fla.1984) (choice to present or not present evidence in mitigation is a tactical decision properly within counsel's discretion).
[5] The court's conclusion that the papers were not public records is not the same as a finding that the papers are public records exempt from public inspection and examination. See State v. Kokal, 562 So.2d 324 (Fla.1990).
[6] Claim XIV of Valle's motion below did not allege ineffective assistance. On appeal, Valle refashioned this claim to allege that counsel was ineffective for conceding that no statutory mitigation had been established. Either way, this claim is barred, as are claims XII and XIII of the motion below. Each of them is an attempt to relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel. As we said in Medina v. State, 573 So.2d 293, 295 (Fla.1990), "it is inappropriate to use a different argument to relitigate the same issue."