[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15724

_____

D. C. Docket No. 03-20387-CV-UNGARO-BENAGES

MANUEL VALLE,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
Florida Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 11, 2006)

Before CARNES, HULL and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Manuel Valle appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus. We address the following issues: (1) whether Valle was denied the effective assistance of counsel at resentencing due to counsels' presentation of model prisoner evidence; (2) whether Valle's rights under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), were violated; (3) whether Valle's rights under the Fifth and Fourteenth Amendments were violated when the trial court denied his motions to suppress incriminating statements; and (4) whether Valle was denied Due Process and Equal Protection based on the manner in which the jury was selected. After argument and consideration of the parties' briefs and the record, we affirm.

## I. Facts and Procedural History

The facts of this case, as summarized by the Florida Supreme Court, are as follows:

> On April 2, 1978, Officer Louis Pena of the Coral Gables Police Department was on patrol when he stopped appellant and a companion for a traffic violation. The events that followed were witnessed by Officer Gary Spell, also of the Coral Gables Police Department. Officer Spell testified that when he arrived at the scene, appellant was sitting in the patrol car with Officer Pena. Shortly thereafter, Spell heard Pena use his radio to run a license check on the car appellant was driving. According to Spell, appellant then walked back to his car and reached into it, approached Officer Pena and fired a single shot at him, which resulted in his death. Appellant also fired two shots at Spell and then fled. He was picked up two days later in Deerfield Beach.

2

*Valle v. State*, 474 So. 2d 796, 798 (Fla. 1985) (*Valle II*).

On April 13, 1978, Valle was indicted for the first degree murder of Pena, the attempted first degree murder of Spell, and the possession of a firearm by a convicted felon. *Valle v. State*, 394 So. 2d 1004, 1005 (Fla. 1981) (per curiam) (*Valle I*). At trial, which began on May 8, 1978, the jury found Valle guilty of all crimes charged. *Id*. at 1006. The jury recommended a sentence of death, which the trial court followed. *Id*. Valle then appealed his convictions and death sentence, and the Florida Supreme Court reversed his convictions in 1981 after finding that Valle was denied his right to effective assistance of counsel when he was required to go to trial within 24 days after his arraignment. *Id*. at 1005.

After remand, Valle was again convicted of first degree murder, received a death sentence, and appealed. *Valle II*, 474 So. 2d at 798. The Florida Supreme Court affirmed his convictions and sentence, *id*., but the United States Supreme Court subsequently vacated judgment and remanded the case to the Florida Supreme Court in light of *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986).[1] *Valle v. Florida*, 476 U.S. 1102, 106 S. Ct. 1943, 90 L. Ed. 2d 353 (1986) (*Valle III*).

_____

[1] In *Skipper*, the Supreme Court held that the exclusion from the sentencing hearing of testimony regarding petitioner's good behavior during the seven months he spent in jail awaiting trial deprived petitioner of his right to present relevant mitigation evidence. 476 U.S. at 4, 106 S. Ct. at 1671.

3

On remand, the Florida Supreme Court determined that Valle was entitled to resentencing because he was previously precluded from putting on the expert testimony of a clinical psychologist and two corrections consultants to show that Valle would be a model prisoner in the future, in violation of *Skipper*. *Valle v. State*, 502 So. 2d 1225, 1225-26 (Fla. 1987) (per curiam) (*Valle IV*). At this resentencing, the jury recommended a sentence of death by eight to four, and the court imposed the death penalty, finding that: "(1) Valle had been previously convicted of another violent felony; (2) the murder was of a law enforcement officer; (3) the murder was for the purpose of preventing lawful arrest; (4) the murder hindered the enforcement of laws; and (5) the murder was cold, calculated and premeditated." *Valle v. State*, 581 So. 2d 40, 43 (Fla. 1991) (per curiam) (*Valle V*). The judge merged factors two, three, and four, and treated them as one aggravating factor. *Id*. The court did not find any mitigation. *Id*.

After this sentencing, Valle again appealed to the Florida Supreme Court, raising a number of claims, including his claim that during jury selection, the judge failed to hold an adequate inquiry into the state's peremptory challenges of black venire members. *Id*. The Florida Supreme Court rejected his claims, and Valle again appealed to the United States Supreme Court, which denied certiorari. *Valle v. Florida*, 502 U.S. 986, 112 S. Ct. 597, 116 L. Ed. 2d 621 (1991) (*Valle VI*).

4

He then filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. *Valle v. State*, 705 So. 2d 1331, 1332 (Fla. 1997) (per curiam) (*Valle VII*). The Florida Supreme Court remanded for an evidentiary hearing on his claim of ineffective assistance of counsel based on his assertion that his defense team unreasonably introduced model prisoner evidence. *Id*. at 1334. After remand, the Florida Supreme Court affirmed the trial court's conclusion that his ineffective assistance claim based on *Skipper* was without merit. *Valle v. State*, 778 So. 2d 960, 966-67 (Fla. 1992) (per curiam) (*Valle VIII*).

Valle then filed a petition for writ of habeas corpus in state court, which was denied. *Valle v. Moore*, 837 So. 2d 905, 906 (Fla. 2002) (per curiam) (*Valle IX*). He subsequently filed a petition for writ of habeas corpus in federal district court, which was also denied. *Valle v. Crosby*, 18 Fla. L. Weekly Fed. D. 1017 (2005) (*Valle X*). The district court granted a certificate of appealability with respect to the four issues outlined above, and this appeal followed.

### III. Standard of Review

Valle filed his petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, this case is governed by the provisions of 28 U.S.C. § 2254 as modified by the Act. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997). With respect

5

to claims adjudicated on the merits, § 2254(d)(1) restricts the issuance of habeas relief to those cases resulting in a decision that was contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Section 2254(d)(2) provides for habeas relief where the state court determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The AEDPA also mandates deference to state court factual determinations. Under § 2254(e)(1), a state court's determination of a factual issue is presumed correct. One seeking habeas relief must rebut this presumption by clear and convincing evidence. § 2254(e)(1).

## IV. Discussion

### A. Ineffective Assistance of Counsel

Valle argues that his 1988 resentencing counsel's performance was deficient because their decision to present model prisoner evidence was based on the mistaken belief that they were required to do so or the previous death sentence would be reinstated. Valle argues that as a result of the introduction of this evidence, the door was opened to the State's presentation of evidence that Valle had twice attempted to escape from prison and an instruction to the jury that Valle

6

had been on death row for ten years. Moreover, Valle argues that he can show prejudice because considering the totality of the evidence, confidence is undermined in the jury's eight to four death recommendation. *See Williams v. Taylor*, 529 U.S. 362, 375, 120 S. Ct. 1495, 1503, 146 L. Ed. 2d 389 (2000) ("[E]rrors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of" the writ of habeas corpus.).

The State responds that the state courts found that counsel made a strategic decision to present prison behavior evidence because other mitigation evidence had previously failed to persuade the jury or trial court not to recommend death. According to the State, Valle has failed to rebut these factual findings by clear and convincing evidence. *See* § 2254(e)(1). Here, the State argues, there is ample support for the finding that the attorneys were not credible. Therefore, the state courts' application of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), was not unreasonable or contrary to clearly established federal law. *See* § 2254(d)(1).

To show that counsel was so ineffective as to require reversal of the conviction, a defendant must show that counsel's performance was deficient and that prejudice resulted therefrom. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To do so, a defendant must show that counsel committed errors that were so

7

serious as to deprive the defendant of the counsel guaranteed by the Sixth Amendment as well as a fair trial whose result is reliable. *Id.*

Here, the trial court found that "despite their claim to the contrary, [counsel] did not believe that they were required . . . to introduce evidence that the defendant was, and in the future, would be a model prisoner," but rather they believed that "without additional mitigating evidence, . . . the result of the sentencing proceeding would be the same" as it was in 1981. *Valle VIII*, 778 So. 2d at 966. Counsel's performance, therefore, was reasonable and not deficient under *Strickland*.

The Florida Supreme Court agreed with the trial court's conclusion that counsel's performance did not constitute deficient performance and that Valle was unable to show prejudice in light of the fact that the trial court found no statutory mitigating circumstances, gave little weight to nonstatutory mitigators, and found three "very powerful" aggravating circumstances. *Id.* at 967.

In this case, as the State correctly points out, Valle has failed to show that the state court's factual findings were incorrect or that its legal determinations were unreasonable or contrary to federal law. *See* § 2254(d)(1). Valle merely reiterates the testimony produced at the evidentiary hearing that the state courts already rejected. Further, the state courts' conclusions regarding prejudice were not contrary to or an unreasonable application of *Strickland*, particularly in light of the

8

absence of mitigating factors and the presence of three strong aggravating circumstances. Therefore, Valle's ineffective assistance claim is without merit.

**B. *Batson* Claim**

Valle claims that his rights under *Batson* were violated when six of the State's nine peremptory challenges at his resentencing proceeding were used to strike black prospective jurors. He says the trial court refused to conduct an inquiry into his *Batson* claim, requiring reversal of his death sentence. Furthermore, he contends that the state trial court never made findings with regard to Valle's claim of discrimination following the state's race neutral explanation, and therefore, the claim should be reviewed de novo. Because the trial court failed to apply *Batson* reasonably, Valle argues that habeas relief is warranted.

The State first claims that Valle's *Batson* claim was properly denied because it is procedurally barred. *See Valle V*, 581 So. 2d at 43-44. Even if the claim was not barred, the State argues that the district court still properly denied the claim on the merits. The Florida Supreme Court rejected Valle's *Batson* claim because, in addition to being procedurally barred, the claim was factually without basis. *Id*. at 44 n.4. The State contends that the AEDPA standard of review is correct, and the district court properly determined that the rejection of Valle's claim was not contrary to, or an unreasonable application of *Batson*.

The Florida Supreme Court summarized what occurred at the 1988 resentencing jury selection:

> After the jury had been selected but before it had been sworn, one of Valle's attorneys claimed "an impropriety in the record" as to the state's use of peremptory challenges against certain jurors. The defense attorney noted that six blacks and two Hispanics were peremptorily excused by the state. The judge then observed that if there was a problem with any particular juror he wanted "the state to be able to respond in whichever manner they wish." One of the prosecutors then asked the judge if he was making a finding that the state had somehow improperly excused jurors. The judge responded, "I've been asked to make no findings and I am making no findings but for record-keeping purposes she has some objection to the state's action and, of course, I'm giving the state an opportunity to respond in time." The state then voluntarily gave its reasons for peremptorily excusing the eight jurors. After the prosecutor finished giving his reasons for exercising the peremptory challenges, the defense attorney stated, "I object on the basis of [Valle's] Sixth, Eighth and 14th amendment rights, to the combination of the challenges for cause, either peremptory challenges leading to a jury that is in favor of the death penalty."

*Valle V*, 581 So.2d at 43-44.

*Batson* prescribes a three-part test to evaluate equal protection challenges to a prosecutor's use of peremptory challenges. 476 U.S. at 96-98, 106 S. Ct. at 1722-24. First, the defendant must make a prima facie showing of discrimination. *Id*. at 96, 106 S. Ct. at 1723. Next, the State must give a race neutral explanation for challenging black jurors. *Id*. at 97, 106 S. Ct. at 1723. Finally, the trial court has the duty to determine whether the defendant has established purposeful

10

discrimination.  *Id*. at 98, 106 S. Ct. at 1724.

Here, it is unnecessary to address the issue of the procedural bar, because even assuming the claim is preserved, Valle is not entitled to habeas relief based on *Batson*.  The Florida Supreme Court did address the merits of the *Batson* claim, concluding that Valle failed to show that "it is likely the challenges were used in a racially discriminatory manner." *Valle V*, 581 So. 2d at 44 n.4.  In reaching this conclusion, the Court reasoned that "[t]wo blacks served as jurors and a third served as an alternate," the prosecutor's reasons for the challenges "appear[ed] to be racially neutral," and "Valle, himself, is not black." *Id.* (citing *Kibler v. State*, 546 So. 2d 710 (Fla. 1989)).  At the time Valle's conviction became final, these reasons were not contrary to, nor an unreasonable application of, clearly established federal law.  *See* § 2254(d)(1).  Therefore, Valle's *Batson* claim is unavailing.

### C. Confession Claim

Valle argues that because he individually and through his attorney invoked his rights to silence and to have counsel present during interrogation, the trial court erred in admitting the subsequently obtained confessions into evidence, and the state courts' adjudication was contrary to or an unreasonable application of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  Here,

11

Valle claims that he invoked his right to silence and his right to counsel when he told Detective Wolf, an interviewing officer, that he had consulted with a public defender and that "she had advised him not to speak to anybody or to sign anything." Further, the lieutenant with custody of Valle was instructed through counsel, and the lieutenant agreed, not to permit police officers to question Valle. Valle contends that under *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), this was sufficient to invoke the *Edwards v. Arizona* rule forbidding further questioning. *See* 451 U.S. 477, 482, 101 S. Ct. 1880, 1883, 68 L. Ed. 2d 378 (1981) (holding that when a suspect invokes the right to consult with an attorney, the suspect is not subject to further interrogation until counsel is made available). Valle cites *Romine v. Head*, 253 F.3d 1349, 1365 (11th Cir. 2001), in support of his contention that we must review his claim involving his right to silence de novo because the Florida Supreme Court did not address Valle's argument on this point.

The State responds that the confession claim was properly denied. After conducting an evidentiary hearing, the trial court found Valle never asserted his right to remain silent or to have counsel present, either himself or through the public defender. The Florida Supreme Court reached the same conclusions. According to the State, the district court properly applied the AEDPA standard of

12

review and determined that Valle had not rebutted the presumption of correctness afforded state court factual findings and that the state court's conclusions were not contrary to or an unreasonable application of federal law.

In this case, there was an evidentiary hearing where the trial court heard the testimony of the public defender, Wolf, and other participants in the arrest and interrogation of Valle. The trial court found that Valle never told the public defender that he intended to invoke his rights to silence and counsel, that Wolf was unaware that Valle had spoken to an attorney until after Valle himself advised him of this fact during the interrogation, and that Valle's statement to Wolf was that he had spoken with the public defender who had told him not to say anything or sign anything. The trial court further found, as a matter of law, that "at no time did [Valle] ever assert his constitutional rights to remain silent or to have counsel present or in any way invoke any of his constitutional rights under . . . *Miranda* . . . ," that "the defendant never intended to and did not invoke his rights to remain silent and to counsel through [the public defender]," and that Valle's "subsequent written waiver of his constitutional rights was freely, knowingly and voluntarily executed by . . . Valle, and that he freely and voluntarily first spoke with Detective Wolf and then freely and voluntarily made a formal written confession."

13

The Florida Supreme Court found that Valle waived his *Miranda* rights and did not subsequently invoke them. *Valle II*, 474 So.2d at 798-99. Valle's statement that his lawyer had advised him not to sign anything or answer any questions was, the Florida Supreme Court said, at best equivocal, and as such, interrogating officers were permitted to clarify Valle's wishes. *Id*. at 799. Valle's statement that he had several experiences with police officers in the past and that he had cooperated in the past and was willing to do so on that occasion showed that Valle voluntarily waived his *Miranda* rights. *Id*. Further, only the defendant may invoke the right to counsel. *Id*. The Florida Supreme Court concluded that Valle's "statement, combined with the previous oral waiver, a later express written waiver, and the fact that at not [sic] time before, during, or after questioning did [Valle] request an attorney, convinces us that he made a voluntary, knowing and intelligent waiver of his *Miranda* rights." *Id*.

In *Miranda*, the Supreme Court recognized that an accused has a constitutional right not to be compelled to make incriminating statements during the process of interrogation. 384 U.S. at 467, 86 S. Ct. at 1624. Because "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege" against compulsory self-incrimination, a suspect in custody also has the right to consult with counsel

14

prior to and during questioning. *Id*. at 469, 86 S. Ct. at 1625. The defendant may waive the privilege against self-incrimination, but the prosecutor must show that the waiver was voluntary, knowing, and intelligent. *Id*. at 475, 86 S. Ct. at 1628.

Here, while it is not disputed that Valle informed Wolf that he had spoken to an attorney and that "she had advised him not to speak to anybody or to sign anything," it was not unreasonable nor contrary to precedent for the state courts to conclude that this was not an invocation of Valle's *Miranda* rights. *See, e.g., Thompson v. Wainwright*, 601 F.2d 768, 771 (5th Cir. 1979) (requiring officers to seek clarification of the suspect's wishes when the suspect's statements are ambiguous), *abrogated by Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994) (clarifying that a suspect must unambiguously assert the right to counsel in order to stop interrogation until counsel is available). This is further buttressed by Valle's statement that he had always cooperated with police and his execution of a written waiver of his *Miranda* rights. The state courts also reasonably rejected Valle's claims that his attorney invoked his rights to silence and to counsel for him. *See Moran v. Burbine*, 475 U.S. 412, 433 n.4, 106 S. Ct. 1135, 1147 n.4, 89 L. Ed. 2d 410 (1986) (explaining that the privilege against compulsory self-incrimination can only be

15

invoked by the defendant).  Therefore, Valle's claims based upon the denial of his motion to suppress do not warrant habeas relief.

### D. Composition of Grand and Petit Juries

Valle next claims that the grand jury that indicted him, as well as all other grand juries dating back to 1971, were selected from venires chosen in a way that resulted in a gross underrepresentation of Latins in violation of the Equal Protection Clause.  *Castaneda v. Partida*, 430 U.S. 482, 493, 97 S. Ct. 1272, 1279, 51 L. Ed. 2d 498 (1977).  He also claims that the process for selecting petit juries systematically excluded distinctive groups in the community and thereby violated the Due Process Clause.  *See, e.g., Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 702, 42 L. Ed. 2d 690 (1975); *Alexander v. Louisiana*, 405 U.S. 625, 630-31, 92 S. Ct. 1221, 1225, 31 L. Ed. 2d 536 (1972).  Here, the state courts and the district court concluded that Valle failed to prove that "Latins" were an identifiable minority and denied his requests for an evidentiary hearing.  Because his contention that Latins are a cognizable minority has not been subjected to evidentiary development, Valle argues that the district court should have granted an evidentiary hearing.

The State contends that the state courts properly denied these claims without granting an evidentiary hearing.  *Castaneda* requires a defendant to show that a

group is a cognizable class by demonstrating that the group is "singled out for different treatment under the laws, as written or as applied." 430 U.S. at 494, 97 S. Ct. at 1280. Based on the conclusory allegations that Valle proffered, the State argues that the state courts did not act unreasonably or in a way contrary to federal law in finding that Valle failed to show that Latins are a cognizable class or in denying Valle's requests for an evidentiary hearing. *See Rojas v. State*, 288 So. 2d 234, 237 (Fla. 1973). Further, the State says that the district court properly denied the evidentiary hearing because Valle failed to develop the record as required by § 2254(e).

To show a violation of the Equal Protection Clause in the context of grand jury selection, a defendant must demonstrate that "the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Castaneda*, 430 U.S. at 494, 97 S. Ct. at 1280. To make such a showing, a defendant must first show that the group is a "recognizable, distinct class, singled out for different treatment under the laws, as written or applied." *Id*. Next, the defendant must show the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion of the group chosen to serve as grand jurors over a significant period of time. *Id*. Finally, a

17

selection process that is prone to abuse or one that is not racially neutral supports a presumption of discrimination. *Id*.

The Due Process Clause is violated when petit juries are not drawn from a source fairly representative of the community. *Taylor*, 419 U.S. at 538, 95 S. Ct. at 702. To prove a prima facie violation of the fair cross-section requirement, a defendant is required to demonstrate that: (1) the allegedly excluded group is "distinctive" in the community; (2) the representation of the excluded group in venires is not "fair and reasonable" relative to the number of such persons in the community; and (3) this underrepresentation is caused by the "systematic exclusion" of the group in the process of jury selection. *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L. Ed. 2d 579 (1979).

Here, the trial court summarily denied Valle's motions to dismiss the indictment and to strike the petit venire. The Florida Supreme Court affirmed the denial of these motions, concluding that in light of *Castaneda* and *Duren*, Valle failed to establish that "Latins" were an single, cognizable group. *Valle*, 474 So. 2d at 800. Both courts denied Valle's requests for evidentiary hearings.

Because Valle attempted to secure an evidentiary hearing in the state courts, Valle's failure to develop a factual basis for his claim in state court does not preclude this Court from granting an evidentiary hearing. § 2254(e)(2); *see also*

18

*Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002). Even so, "no evidentiary hearing is necessary where the proffered evidence would not affect the resolution of the claim." *Bolender v. Singletary*, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994). Therefore, in order to obtain an evidentiary hearing, Valle must demonstrate that his factual allegations, if proven, would indicate that the state courts acted contrary to, or unreasonably applied, clearly established federal law when they rejected his Equal Protection and Due Process claims. *See* § 2254(d).

Valle's factual proffer in state court included the following: (1) the Dade County Commission's creation of the Department of Latin Affairs in 1973 based on a recognition of difficulties encountered by people from Cuba, Mexico, Spain, and other Latin American countries who do not speak English; (2) expert testimony that Latins differ from other residents of Dade County because of language and culture; (3) an expert's conclusion that grand jury venires had not been randomly selected with regard to Latins; (4) and evidence that showed that no Latin forepersons had been selected to preside over grand juries between 1967 and 1977, and the foreperson on the grand jury indicting him was a non-Latin male. Because Valle does not offer any evidence in support of his claim that was not already considered by the state courts, we consider whether the state courts acted

contrary to, or unreasonably applied, clearly established federal law when they rejected his claims. *See Bolender*, 16 F.3d at 1555 n.9; *see also* § 2254(d).

Here, the Florida Supreme Court's conclusion that "[t]he term 'Latin American' encompasses people from too many different countries and different cultural backgrounds and attitudes to constitute a single cognizable class for equal protection analysis" is not contrary to or an unreasonable application of *Castaneda* or *Duren*. *See Valle II*, 474 So. 2d at 800; *see also United States v. Rodriguez*, 588 F.2d 1003, 1007 (11th Cir. 1979) (stating that appellant's mere assertion that his statistics indicated that the number of Latin registered voters had more than doubled since the master jury wheel was last filled indicated purposeful discrimination was insufficient to show that "persons of such diverse national origins as Cubans, Mexicans, and Puerto Ricans possess such similar interests that they constitute a cognizable group . . . ." (quotation omitted)). Therefore, Valle is not entitled to habeas relief on this ground.

## V. Conclusion

Based upon consideration of the parties' arguments, briefs, and the record, we affirm the district court's denial of Valle's petition for habeas relief.

**AFFIRMED.**