[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 16, 2007
THOMAS K. KAHN
CLERK

No. 05-15724
_____

D.C. Docket No. 03-20387-CV-UNGARO-BEN


MANUEL VALLE,

                                        Petitioner-Appellant,

    versus

SECRETARY FOR THE DEPARTMENT
OF CORRECTIONS, Florida Department of
Corrections,

                                        Respondent-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____


**ON PETITION FOR REHEARING EN BANC**

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, and PRYOR, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is **DENIED.**

/s/ J.L. Edmondson

_____
CHIEF JUDGE

WILSON, Circuit Judge, concurring:

Although Manuel Valle's petition for rehearing failed to raise the issue, we considered *sua sponte* his challenge to the composition of his grand and petit juries.[1] Valle had originally contended that the process for selecting jurors in 1978 when he was indicted underrepresented "Latin Americans" in a way that violated his due process and equal protection rights under the United States Constitution. We considered whether this Court erred in finding that the Florida Supreme Court's decision in *Valle v. State (Valle II)* 474 So. 2d 796 (Fla. 1985), which concluded that the term "Latin American" failed to represent a single cognizable class for equal protection analysis, was not contrary to or an unreasonable application of clearly established federal law. While I agree that *today* Latin Americans are a constitutionally cognizable class under the Fourteenth Amendment, the Antiterrorism and Effective Death Penalty Act ("AEDPA") strictly limits our habeas review to whether the Florida Supreme Court's decision of July 11, 1985 "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the case was decided. 28 U.S.C. § 2254(d)(1); *see also Lockyer*

---

[1] The sole argument made in Valle's petition for rehearing was that the Court erred in rejecting his *Batson* claim. *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

3

*v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003). Our habeas review is so limited that we are not permitted to disturb a state court decision even if we conclude in our independent judgment that the state court incorrectly applied the relevant Supreme Court precedent. *See Woodford v. Visciotti*, 537 U.S. 20, 24-25, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002). The federal habeas scheme authorizes intervention on our part only when the state court decision was objectively unreasonable. *Id*. at 27, 123 S. Ct. 361. Applying this limited standard of review to Valle's case, we held that the Florida Supreme Court's decision respecting his equal protection and due process claims was not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court at the time *Valle II* was decided. *Valle v. Sec'y for Dep't of Corr.*, 459 F.3d 1206, 1216-17 (11th Cir. 2006).

On habeas review, we go back in time and put ourselves in the position of the Florida Supreme Court when it decided *Valle II*. Therefore, we look to United States Supreme Court precedent as of July 11, 1985 for guidance. In *Hernandez v. Texas*, 347 U.S. 475, 74 S. Ct. 667, 98 L. Ed. 866 (1954), the question before the Supreme Court was not whether "Latin Americans" but whether persons of "Mexican" descent were systematically excluded from the jury venires in Jackson County, Texas. *Id*. at 476-77, 74 S. Ct. at 669-70. In deciding the case, the

4

Supreme Court recognized persons of Mexican descent as a cognizable class in the community. *Id*. at 479-80, 74 S. Ct. at 671. In *Keyes v. School District No. 1*, 413 U.S. 189, 93 S. Ct. 2686, 37 L. Ed. 2d 548 (1973), the Supreme Court arguably expanded upon *Hernandez* to the extent that it was willing to include within the class "Hispano" persons from more than one country. *Id.* at 195-97, 93 S. Ct. at 2691. However, *Keyes* did not clearly establish that Latin Americans were a constitutionally cognizable group for the selection of grand and petit juries. In fact, each case the Supreme Court cited in support of its conclusion that Hispanos were an identifiable class referred only to persons of Mexican descent. *Keyes*, 413 U.S. at 197, 93 S. Ct. at 2691 (citing *Hernandez*, 347 U.S. 475, 74 S. Ct. 667; *United States v. Tex. Educ. Agency*, 467 F.2d 848 (5th Cir. 1972) (en banc); *Cisneros v. Corpus Christie Indep. Sch. Dist.*, 467 F.2d 142 (5th Cir. 1972) (en banc); *Alvarado v. El Paso Indep. Sch. Dist.*, 445 F.2d 1011 (5th Cir. 1971); *Romero v. Weakly*, 226 F.2d 399 (9th Cir. 1955); *Soria v. Oxnard Sch. Dist.*, 328 F. Supp. 155 (C.D. Cal. 1971)). Therefore, no United States Supreme Court cases prior to July 11, 1985 provide support for a finding that the Florida Supreme Court's decision in *Valle II* was contrary to clearly established federal law.[2]

---

[2] In *Valle II*, the Florida Supreme Court cited *United States v. Rodriguez*, 588 F.2d 1003 (5th Cir. 1979), where this Court's predecessor found that the appellant had failed to establish that voters of "Latin origin" were a cognizable class for a jury challenge. *Id.* at 1007. The Court

5

In her dissent, Judge Barkett suggests that the Florida Supreme Court overruled *Valle II* in *State v. Alen*, 616 So. 2d 452 (Fla. 1993). I am not so sure. Even if it did, whether or not the Florida Supreme Court decides to later revisit one of its own opinions has no bearing upon our standard of review. In *Alen*, the Florida Supreme Court did not state that its holding in *Valle II* was an incorrect statement of federal law. *See id.* at 455. Rather, the *Alen* court receded from *Valle II* to the extent that *Valle II* conflicted with its decision in *Alen* that a person's national origin or geographical area was only an important, but not a decisive, factor in determining a person's ethnicity. *Id.* The Florida Supreme Court's decision in *Alen* also recognized that neither the U.S. Supreme Court nor Florida law had clearly defined Hispanics as a cognizable class. *See id.* at 454-55. In *Alen*, the Florida Supreme Court only went so far as to note a national trend towards identifying Hispanics, or Latin Americans, as a cognizable class.

---

stated that: "there [is] simply no evidence upon which this Court could base a finding that persons of such diverse national origins as Cubans, Mexicans, and Puerto Ricans possess such similar interests that they constitute a cognizable group." *Id.* (alteration in original; internal quotation marks omitted). The Florida Supreme Court also cited *United States v. Duran de Amesquita*, 582 F. Supp. 1326 (S.D. Fla. 1984), in which the district court stated: "If the proposed class were 'Cuban-Americans,' or 'Spanish-Americans,' or 'Puerto Rican-Americans,' [instead of 'Hispanics,'] the mental image of the 'cognizable class' would be easy to discern. . . . But to lump persons from so many countries (even continents) together as a distinct class requires the exercise of considerable philosophical imagination." *Id.* at 1328. While not U.S. Supreme Court precedent, *Rodriguez* and *Duran de Amesquita* demonstrate that the Florida Supreme Court's decision in *Valle II* was consistent with this Circuit's interpretation of the Sixth and Fourteenth Amendments in this context and further support our conclusion that *Valle II* was not contrary to or an unreasonable application of clearly established federal law in 1985.

6

Accordingly, *Alen*, which was decided eight years after *Valle II*, cannot establish that *Valle II* was contrary to federal law at the time it was decided.

In sum, I agree that the law has evolved to the point that Latin Americans are now a cognizable class for due process and equal protection purposes. However, the matter before this Court in the present context is the proper interpretation and application of our statutorily mandated § 2254(d)(1) deferential standard of review of a 1985 Florida Supreme Court decision. In the absence of a United States Supreme Court holding as of July 11, 1985 that the term "Latin American" constituted a cognizable class for equal protection purposes, this Court properly adhered to § 2254(d)(1)'s standard of review. I have no worry then, as does Judge Barkett, that our decision to deny rehearing en banc will result in a misapprehension of law.

BARKETT, Circuit Judge, dissenting:

I would grant the petition for rehearing en banc in this case. I believe en banc review is warranted to correct a misapprehension of law in the panel opinion that states that Latin Americans, at the time that Valle's conviction was upheld in 1985, were not a constitutionally protected cognizable class, and that may erroneously be read to suggest that they are still not a constitutionally protected cognizable class.

The panel opinion affirms the denial of habeas relief on the basis that the Florida Supreme Court held in 1985 that the "term 'Latin American' encompasses people from too many different countries and different cultural backgrounds and attitudes to constitute a single cognizable class for equal protection analysis." Valle v. Sec'y for Dep't of Corr., 459 F.3d 1206, 1216-17 (11th Cir. 2006) ("Valle") (citing Valle v. State, 474 So.2d 796, 800 (Fla. 1985) ("Valle II")). What the opinion fails to say is that this holding was expressly overruled by the Florida Supreme Court and that Latin Americans have been found to constitute a cognizable class under the Fourteenth Amendment. More importantly for the resolution of this case, the opinion fails to recognize that _federal_ law prior to 1985, the year Valle II was decided, already afforded protection to Latin Americans as a

8

cognizable class under the Fourteenth Amendment.[1]

Prior to 1985, Latin Americans or Hispanics were considered a constitutionally protected cognizable class under the law. In 1954, the Supreme Court held in Hernandez v. Texas that evidence warranted the finding that persons of Mexican descent were a separate class, "distinct from 'whites'" in the community in question, and that there had been systematic exclusion of the members of such class from jury service. 347 U.S. 475, 479-482 (1954). Although Hernandez dealt specifically with Mexican-Americans, the Court also referred to "Latin Americans" more generally and people with "Latin American surnames" when discussing the evidence presented by the petitioner. Id. at 480-81.

In 1973, the Supreme Court held in Keyes v. Sch. Dist. No. 1 that "Hispanos constitute an identifiable class for purposes of the Fourteenth Amendment." 413 U.S. 189, 197 (1973) (citing Hernandez, 347 U.S. at 475). Instead of using the term "Mexican-Americans," the Supreme Court chose to use the broader term "Hispanos." The term "Hispanos" was used and defined by the Colorado Department of Education to refer to persons of Spanish, Mexican, or Cuban

---

[1] Contrary to Judge Wilson's characterization of the case as a mere "incorrect" application of federal law, Valle II fundamentally misunderstood and unreasonably applied relevant Supreme Court precedent at the time. See Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (stating that an unreasonable application of federal law is different from an incorrect application of federal law; only an unreasonable application of federal law warrants granting a writ of habeas corpus).

heritage. <u>Keyes</u>, 413 U.S. at 196 n.6. There is no principled distinction to be made between Hispanos and Latin Americans. If anything, the term "Hispanos" denotes a larger ethnic group of people than those considered to be "Latin Americans" or "Mexican-Americans."[2] In light of these two Supreme Court cases, it is clear that, prior to 1985, Latin Americans were afforded protection as a cognizable class under the law.[3]

In addition to incorrectly concluding that the Florida Supreme Court's

---

[2] This analysis parallels cases dealing with challenges to jury venires based on the exclusion of black or "African-American" people. Claims concerning African-American prospective jurors have never been denied on the basis that they do not represent a distinct group within the community, notwithstanding the fact that African-Americans may be born in the United States and have African, Carribean, South American, etc., ancestry. Rather, courts have consistently held, since 1879, that blacks are distinctive members of the community. <u>See</u> <u>Gibson v. Zant</u>, 705 F.2d 1543, 1547 (11th Cir. 1983) ("[B]oth black persons, <u>Strauder v. West Virginia</u>, 100 U.S. 303 (1879), and women, <u>Taylor v. Louisiana</u>, [419 U.S. 522 (1975)], constitute recognizable, distinct classes."). <u>See</u> <u>also</u> <u>United States v. Williams</u>, 264 F.3d 561, 568 (5th Cir. 2001) ("In so far as African-Americans constitute a distinctive group in the community, the first requirement of Defendant's <u>prima</u> <u>facie</u> case is met"); <u>United States v. Royal</u>, 174 F.3d 1, 6 (1st Cir. 1999) ("There is no dispute that Royal has satisfied the first prong of this test; blacks are unquestionably a 'distinctive' group for the purposes of a fair cross-section analysis."). There is no reason why we should treat Hispanics or Latin Americans any differently.

It is also worthwhile to note that courts use the term "black" and "African-American" interchangeably, in spite of the fact that the term "African-American" refers to a specific subset of "black" people who descend from people originally from Africa. The difference in these terms is analogous to the differences between the terms "Hispanic" and "Latin American" and highlights the fact that the national origin of the people comprising the relevant racial group is not always a critical factor in their experiences of discrimination in a community—rather, their experiences are based on discrimination against their linguistic and cultural differences, things that are shared by Hispanics and Latin Americans irrespective of their national origin.

[3] Although, as Judge Wilson points out in his concurrence, the language of these cases did not expressly use the term "Latin Americans" in extending protection under the Constitution, the language the Court used compels the conclusion that Latin Americans were also protected at the time.

decision in <u>Valle II</u> was not contrary to clearly established federal law as it existed in 1985, the panel's opinion creates the erroneous impression that Latin Americans are still not deserving of recognition as a cognizable class for equal protection purposes under the law as it exists today. Although the panel's opinion is grounded in the narrow standard of review required of habeas petitions, this analysis is absent in the opinion, which simply says that "the Florida Supreme Court's conclusion . . . is not contrary to or an unreasonable application of <u>Castaneda</u> or <u>Duren</u>." <u>Valle</u>, 459 F.3d at 1216-17. This conclusory statement creates the erroneous impression that the Florida Supreme Court's conclusion in <u>Valle II</u> reflects the current legal landscape.[4]

To the contrary, the case relied upon by the panel was overruled in 1993 by the Florida Supreme Court in <u>State v. Alen</u>, 616 So.2d 452, 455 (Fla. 1993).[5] In

---

[4] The panel's opinion also erroneously creates the impression that the inquiry into whether a group is deserving of status as a cognizable class for equal protection purposes is a pure question of law, rather than a mixed question of law and fact. The inquiry into whether a group is one that is "a recognizable, distinct class" within a community is a factual one requiring evaluation of the manner in which the group is treated within the community. <u>Castaneda v. Partida</u>, 430 U.S. 482, 494-496 (1977). Valle was therefore entitled to an evidentiary hearing on this issue.

[5] Although Judge Wilson professes uncertainty as to whether <u>Alen</u> overruled the holding of <u>Valle II</u>, the language in <u>Alen</u> speaks for itself. <u>Alen</u> expressly extends protection to Hispanics, a group which the court found to include Latin Americans, which is directly contrary to the language in <u>Valle II</u> denying protection to that group. <u>Alen</u> notes that to "the extent that our decision today is inconsistent, we recede from our holding in <u>Valle</u>." <u>Alen</u>, 616 So.2d at 455. Accordingly, at a minimum, the panel opinion should acknowledge that <u>Valle II</u> has been abrogated by the Florida Supreme Court in <u>Alen</u>, 616 So. 2d at 455, which held, directly contrary to <u>Valle II</u>, that Hispanics constitute a protected, cognizable class. <u>See</u> The Bluebook: A Uniform System of Citation R. 10.7, at 92-94 (Columbia Law Review Ass'n et al. eds., 18th ed.

11

<u>Alen</u>, the Florida Supreme Court held that <u>Hispanics are, in fact, a cognizable group within the community</u>. The Court explained:

> Like many ethnic groups, there are a variety of distinctive variables that divide the Hispanic community into subgroups, just as there are a variety of variables that divide other cognizable classes such as African Americans. Notwithstanding these distinctions among Hispanics, the size and the external and internal cohesiveness of this ethnic group qualify Hispanics as a cognizable class for <u>Neil</u> purposes. We join the California Supreme Court in recognizing that many ties bind Hispanics together as a cognizable group within the community. Hispanics often share an ethnic and cultural community of interest, including language, history, music, and religion.[6]

<u>Id.</u> (footnote, quotations, and citations omitted).

In receding from its prior decision in <u>Valle II</u>, the Florida Supreme Court further explained:

> In <u>Valle v. State</u>, 474 So. 2d 796 (Fla. 1985), <u>vacated on other grounds</u>, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986), we stated that "the term 'Latin American' encompasses people from too many different countries and different cultural backgrounds and attitudes to constitute a single cognizable class for equal protection analysis." 474 So. 2d at 800. The term "Latin American" denotes a person who comes from a geographical area, whereas the term "Hispanic" denotes a broader group of people who have a similar ethnic and cultural background, but may

---

2005).

[6] The Court went on to explain:
> In addition, Hispanics have made notable achievements in the professions, the arts, industry and public life. On a more somber note, Hispanics, in relation to other Americans, share a host of harsh realities, such as relatively high unemployment, poverty, relative lack of educational opportunity and, of import to the present case, discrimination directed at them precisely because they are Hispanic.

<u>Alen</u>, 616 So.2d at 455 (<u>citing</u> <u>People v. Trevino</u>, 704 P.2d 719, 726-27 (Cal. 1985).

or may not have a country in Latin America as their place of national origin. <u>To the extent that our decision today is inconsistent, we recede from our holding in Valle. Like the characteristics of language and surname, national origin is an important, but not a decisive, factor in determining a person's ethnicity.</u>

<u>Id.</u> (emphasis added).

Further, several United States Supreme Court and Court of Appeals decisions also identify Hispanics, or Latin Americans, as a cognizable class that is clearly afforded constitutional protection under the law today. In <u>Bush v. Vera</u>, the Supreme Court simply accepted that "Hispanics" constituted a racial group and struck down a 61% majority "Hispanic" district as an unconstitutional racial gerrymander. 517 U.S. 952, 973-75 (1996). In a recent Texas redistricting case, the Court treated "Latinos" as a "racial group" able to assert a violation of Section 2 of the Voting Rights Act. <u>League of United Latin Am. Citizens v. Perry</u>, 126 S. Ct. 2594, 2614-15 (2006). Indeed, the only district that the Court struck down in <u>Perry</u> was one that replaced a politically cohesive Latino district with another Latino district whose "only common index [was] race." <u>Id.</u> at 2619. <u>See also</u> <u>United States v. Rodriguez-Lara</u>, 421 F.3d 932, 941 (9th Cir. 2005) ("Hispanics have long been recognized as a 'distinctive' group in the community."); <u>United States v. Alvarado</u>, 891 F.2d 439, 444 (2d Cir. 1989), <u>vacated on other grounds</u>, 497 U.S. 543 (1990) (holding that Hispanics constitute a cognizable group for

purpose of assessing claims of discriminatory use of peremptory challenges and that a defendant is not required to establish that fact when challenging exclusion of Hispanics from a jury). The Voting Rights Act's inclusion of linguistic minorities further supports that "Latin Americans" are treated as a distinct group in the community. Indeed, Congress included language minorities in the Voting Rights Act based on findings that "voting discrimination against citizens of language minorities is pervasive and national in scope." 42 U.S.C. § 1973b(f)(1) (2000).

For these reasons, I dissent from the denial of rehearing en banc.